Tile Chancellor.
Let a reference be made to James Wilson, esq., one of the masters of this court, to take an account, as follows:
First. Of all the personal property of the testator at the time of his death, and charging the executors with the same, as respectively received by them.
Second. Of all the personal property which has come to the hands of the executors, respectively, or which, by due diligence, they might have received.
Third. Of the rents and issues of the real estate, which have come to the hands of the executors, respectively, or which by due diligence they might have received.
Fourth. Of all the real estate of the testator of which he died seized, and stating the annual value of the different parcels thereof, as near as can be ascertained.
Fifth. Of all the debts, legacies, and expenses paid by the executors, respectively, in the due administration of the estate, and showing the residue of the personal estate in the hands of the executors, and of which of them, after such discharge.
Sixth. Of the investments made by the executors in productive real estate, if any, with the residue of the personal estate, as ascertained as aforesaid.
Seventh. Of the moneys expended by the said executors, as trustees under the will, in improvements and repairs of the real estate, and the character of such improvements.
Eighth. Of the investments, if any, of the rents and profits of the real estate.
*394 Ninth. Of the amount due the estate of the testator, at the time of his death, by John Coryell, after allowing him all just set-ofij stating the accounts between the parties.
Tenth. Of the amount due the estate of the testator, at the time of his death, by Alexander Coryell, after allowing him all just set-offs, stating the accounts between the parties.
Eleventh. To examine and report whether it is for the interest of the cestui que trust that the conveyance made by Alexander Coryell, dated September 24th, 1853, to the executors and trustees should stand; and also, whether it is for their interest that .the conveyances made by John Coryell to the executors and trustees of the mill properly and of the brick houses in Lambertville should stand.
These accounts should have been taken on the coming in of the answer. The complainant was entitled to an account, as a matter of course. I do not deem it proper to decide- this case finally until such accounts are taken. If these defendants, or any of them, have violated their trust, and the court is called upon to remove them for such misconduct, it is important and requisite to have an accurate statement of the accounts, in order that the court may protect, by its decree, the right of the parties interested.
There was some argument upon the construction of the will, and it is proper that I should not pass it over without some intimation of my views in reference to it. The testator directs that all the residue of his personal estate, after payments of debts and legacies, shall be invested in productive real estate. This does not authorize the executors to purchase vacant lots, and erect buildings upon them. Such property cannot be considered as productive real estate. It is unproductive property, made productive after purchase, which cannot be said to be properly within the intention of the testator.
By the fourth clause of the third codicil, the testator authorizes his executors to make suitable and convenient improvements and necessary repairs on the real estate in *395 their possession. I think this, in connection with the language used as to the purchase of productive real estate, is inconsistent with the idea that the testator meant his executors to purchase vacant lots, and erect buildings upon them. The fifth clause of the third codicil shows that the testator contemplated that, after the improvements made, there would remain a surplus in the executors’ hands, and he directs its disposition. This hardly comports with the idea that he intended they should use the funds in their hands indiscriminately in the erection of buildings.
The payment annually to the complainant is to be made out of the real estate; and I think it was clearly the intention of the testator that the improvements and repairs upon the real estate are to he made out of the rents and profits of the real estate, and not out of the personal estate which he left at his decease; for he directs specifically what payments shall be made out of the personal, and that the residue shall he invested in real estate, and then disposes of it as a separate fund.
The testator creates two funds with his property. The real estate left by him at his death, with such real estate as the executors are authorized to purchase with his personal property, constitute one fund. The residue of the proceeds of all his real estate, after paying for improvements and repairs, is to he kept annually at interest, and this constitutes another fund. I have ordered an inquiry by the master respecting the properties conveyed by the Goryells to the estate. "What course the court may deem proper to take in reference to them, will depend in a measure upon the result of the investigation of the master. The court may find it necessary to let these conveyances stand as a security to the estate.